Abraham J. Gellihoff, J.
Motions Nos. 116, 165 and 234 of September 15, 1972, and No. 21 of September 18, 1972, are consolidated.
These article 78 proceedings are brought by various patrolmen in the Police Department of the City of New York who took and failed the promotional examination held on April 12, 1969 for the position of sergeant. Broadly speaking, petitioners seek to vacate a prior order, entered April 26, 1972, which settled the case of Gilmartin v. Bronstein (Index No. 7966-71), then pending in this court. The order, based on a stipulation between the parties to that proceeding, lowered the passing grade on the examination, Promotional Examination No. 8528, from 77.7% to 73.4%. The present petitioners seek to further lower the passing grade to 70%.
The notice of the examination provided that the passing grade was to be the grade of the six hundredth highest scorer. Thereafter a tentative answer key was published and, later, a somewhat amended final answer key. The mark of the six hundredth highest scorer being 77.7%, that score was fixed as the passing grade.
The entire grading system was then challenged in an article 78 proceeding brought in the Gilmartin case. The petitioners in that proceeding asserted that the answers they had given to *112 various questions were as good as, or "better than, the final key answers promulgated by respondents (see Matter of Acosta v. Lang, 13 N Y 2d 1079, 16 N Y 2d 668). They also asserted that, after finally grading the examination papers and discovering which candidates passed or failed, respondents created a test validation board which changed the final key answers. The Gilmartin petitioners contended, among other things, that the changing of the final key answers by the test validation board violated the Civil Service Bules and Begulations, and that, therefore, all candidates who had received passing grades before the action by the test validation board should be certified as having passed.
After various intermediate motions (see Gilmartin v. Bronstein, N. Y. L. J., Sept. 29, 1971, p. 17, col. 2; N. Y. L. J., Oct. 26, 1971, p. 20, col. 1; Matter of Gilmartin [Bronstein], N. Y. L. J., Oct. 28, 1971, p. 2, col. 7; N. Y. L. J., Dec. 7, 1971, p. 2, col. 5), the Gilmartin petitioners and respondents entered into the settlement stipulation upon which the order sought to be vacated is based. One day less than four months later, on August 25,1972, the present petitioners served and filed their respective petitions, bringing on the instant motions.
The petitioners in Matter of Mulkeen v. Bronstein allege that the stipulation and settlement, with the resulting lowering of the passing grade, were beyond respondents’ powers. They argue that respondents abandoned their originally established passing grade of 77.7% ; that the subsequent setting of the grade at 73.4% was invalid; and that, by operation of law (N. Y. City Civil Service Rules and Regulations, § 4.5.3[a]), the passing grade is 70%. In a companion proceeding, these same petitioners seek to revive, and intervene in, the already settled Gilmartin proceeding.
The petitioners in Agosta v. Bronstein similarly assail the settlement, but alternatively urge that the order be amended to reduce the passing grade to the level at which all applicants who had received passing grades prior to the creation of the test validation board would pass.
MULKEEN MOTION TO INTERVENE IN GILMARTIN V. BRONSTEIN (supra) :
The Gilmartin proceeding was not a class action. It was a proceeding by specific individuals, who settled their dispute on what they considered appropriate terms. The instant petitioners waited until months after the final disposition of Gil-martin before attempting to intervene in it, and they offer no authority to support such post-judgment intervention.
*113 In any event, the motion is time barred. The Gilmartin proceeding involved a challenge to the grading of the examination. It is now long past the limitation period to commence such a challenge (CPLR 217), and the Statute of Limitations may not be avoided by intervening in a pending proceeding after the limitations period has run. Indeed, in this very Gilmartin case, an earlier attempt td intervene was rejected on the ground of the Statute of Limitations (Gilmartin v. Bronstein, N. Y. L. J., April 11, 1972, p. 16, col. 3).
Accordingly, both the Statute of Limitations and the doctrine of laches preclude the relief requested, and the motion to intervene is denied.
MULKEEN MOTION TO LOWER THE PASSING GRADE TO 70% :
During the time the Gilmartin litigation was pending, the Police Department determined that it needed far more sergeants than it had estimated. In the judgment of the department a new examination would not supply their urgent need because of the necessary delay involved in scheduling a new examination, preparing test questions, holding the examination, grading, processing protests, compiling a passing list, and actually promoting successful candidates. Additionally, litigation was pending in Federal court — as it still is — challenging the entire examination process on the ground of racial bias. Under the circumstances,- respondents determined to obtain the required number of additional sergeants by increasing the ^umber of eligibles from among the candidates who had already competed in Promotional Examination No. 8528. Accordingly, acting under section 4.5.3 (b) of the Civil Service Rules and Regulations of the City of New York respondents fixed the passing grade at 73.4%. That section provides that: “ Where it is anticipated that the number of eligibles will not meet the needs of the service, the director may, in order to provide an eligible list to meet the needs of the service, authorize the use of any type or combination of types of conversion methods or a mathematical formula of penalties for incorrect answers on the basis of test difficulty and other relevant factors involved in the rating of any written test.”
The purpose of the rule is to enable respondents to fix such passing grade as will provide the required number of eligibles. Here, when it was discovered that the need for eligibles had b^en-underestimated, a new passing mark was established to yfeflect the true need. Instead of utilizing the technique of a “conversion method” or “mathematical formula ” as the *114 means of achieving this end, respondents accomplished the same result by directly lowering the passing grade.
Since a lower passing grade is the result envisaged by the rule (see Matter of Robbins v. Schechter, 7 Misc 2d 436, 437, affd. 3 A D 2d 1010, affd. 4 N Y 2d 935), and particularly since the notice' of examination here did not fix the passing grade at any specific mark, but left the precise passing grade indefinite — to be determined after the papers were all graded and to permit respondents to fix as the passing grade such score as would provide a certain number of eligibles — the direct lowering of the passing' grade .was an appropriate application of section 4.5.3(b). This action did not discriminate against any of the candidates who had failed to achieve a grade of 77.7 %; it operated uniformly, for the benefit of all failing candidates, by enabling them to receive a passing grade if they had reached the lower score of 73.4%.
Petitioners urge, however, that section 4.5.3(b) may be employed only before the passing list is disclosed, and that once the list has been promulgated, a failing grade may not be changed to a passing one...
Nothing in section 4.5.3(b) restricts its use to a time prior to the disclosure of grades. Moreover, as a practical matter, the date a passing list is promulgated is not the first time that names are disclosed., Thére are always protests to the tentative key, and, in those protests, names and grades are disclosed. To accept petitioners’ time limit on respondents’ power to fix a lower passing grade would so drastically curtail implementation of the rule as to render it ineffective.
The possible abuses prophesied by petitioners do not require a different conclusion. The lowering of the passing grade here has resulted from an undeniably unforeseen need to add several hundred names to the eligible list, which, even with the additions, is due shortly to expire — well within the time period of four years set by the rules (N. Y. City Civi Service Rules and Regulations, § 4.6.6). Should a case ever arise where respondents act arbitrarily or capriciously, or out of motive to benefit or injure specific individuals, or to extend the life of a list beyond the time limits provided in the rules, nothing in this decision in any way precludes ameliorative action.
Matter of Wittekind v. Kern (170 Misc. 939, affd. 256 App. Div. 918, affd. 281 N. Y. 701), upon which petitioners rely, is not in point. There the rule which the Civil Service Commission invoked to expand the eligible list was adopted after the list had been promulgated, The ratio decidendi of Wittekind *115 is that the commission may change its rules only prospectively, and that a rule that permits lowering a passing grade which is adopted after the promulgation of a list is inapplicable to that list (see, also, Matter of Hymes v. Schechter, 6 N Y 2d 352, 357). In the instant-case, section 4.5.3(b) was already in effect before the examination was taken and the list published.
The court concludes that, authorization to lower the passing grade — under the circumstances disclosed here — was within the intendment of the broad language used by section 4.5.3(b). Consequently, it is unnecessary to consider whether, had the lowering been ruled invalid, the original grade of 77.7% would be restored, or whether section 4.5.3(a) —which provides, in effect, that ‘1 unless otherwise specified,” the passing grade shall be 70% —would be applicable here.
Apart from what has been said, the action of respondents was authorized by section 4.5.4 of the Civil Service Rules and Regulations, which provides, in pertinent part: “ The commission, at any time prior to the establishment or during the existence of an eligible list, may correct any manifest error or mistake made in connection with an examination, on its own initiative or in the granting of a claim of manifest error or mistake. Such .action on the part of the commission may result in a higher or lower rating. The nature of such manifest error or mistake shall be set forth in its minutes.”
The failure to “ anticipate that the number of eligibles will not meet the needs of the service ” (N. Y. City Civil Service Rules and Regulations, § 4.5.3 [b]) was a manifest mistake-. To correct this mistake required the fixing of an appropriate passing grade, as authorized by section 4.5.3(b). A grade received at an examination inheres in the examination itself; and an error or mistake in fixing an adequate passing grade is an error or mistake “ in connection with an examination.”
Petitioners’ contention that the rule applies only to errors with respect to the key answers to the examination is refuted by the legislative history of the provision. In 1938 — and this was when the Wittekind case was decided — the rule provided that the commission had the power to “ correct any manifest error or mistake of marking or rating appearing in any [examination] paper ”. (Emphasis added.) The rule was amended before the instant examination was given so as to empower the commission to correct “ any manifest error or mistake made in connection with an examination ”. (Emphasis added.) Petitioners’ interpretation would give no effect to the amendment and must be rejected. In this connection it should be noted *116 that the amended rule specifically empowers the commission to correct manifest error or mistake at any time “ during the existence of an eligible list.”
The commission’s omission to set forth in its minutes the “ nature of such manifest error or mistake ” is not fatal. This ministerial act may be performed now, as a record of authorized action taken on the basis of facts as they then existed and upon authorization by the court.
On oral argument, counsel for the Mulkeen petitioners, although not contesting the increased need for sergeants, argued that the Gilmartin settlement was an “ invidious compromise ” based upon respondents’ fear of embarrassing litigation, rather than a decision grounded in the need for additional sergeants. In their own memorandum, however, petitioners concede that this assertion is “ only speculation on our part ”.
In any event, the objective facts establish -the bona fides of the settlement. Thus, the settlement did not benefit all the Gilmartin petitioners. Fully one sixth of them failed to score even 73.4% on the examination, and therefore were not made eligible by the settlement. Moreover, those 100 Gilmartin petitioners who were passed as a result of the compromise still had to compete for promotion not only with the candidates who already were on the list, but also with the 750 other candidates who, as. -a result of the settlement, were likewise passed. Further, and of significance, is the fact that the lowered passing grade appears to have resulted in the correct number of eligibles necessary to meet the need for additional sergeants.
In light of the foregoing, the court finds no merit to the Mulkeen petitioners’ arguments. However, it must also be noted that the equities in this matter lie squarely with respondents. The petitioners did not receive a sufficient mark even on the basis of the lowered passing grade. They did not consider their chance of promotion sufficiently good to warrant their joining in the initial challenge to the examination and the ratings. They now come in at the very last minute and ask the court to take action which could possibly void the promotions of some 850 men, with resulting chaos within the Police Department.
Indeed, it is difficult to understand how these petitioners are aggrieved at all. The reduction in the passing grade did not affect them, and they have not been precluded from further competing for promotion. During oral argument, respondents informed the court that another examination — the first under the Equal Employment Opportunities Commission guidelines *117 —is now scheduled for September, 1973. The list established by the examination which is the subject matter of this litigation will not expire by operation of law until substantially after September, 1973 (see N. Y. City Civil Service Rules and Regulations, § 4.6.6). To grant the Mulheen petition would create some 1,500 new eligibles to the existing list — many of whom might have to be promoted immediately despite the lack of current need, since their over-all grades would be higher than those of others already promoted — and thus postpone the scheduled examination until far into the future, to the prejudice of many thousands of police officers, and the citizens of this city.
The Mulheen application is denied, and the petition dismissed.
AGOSTA MOTION TO LOWER THE PASSING GRADE:
To the extent that the Agosta petitioners seek to overturn the order dated April 26, 1972, the application is denied in accordance with the decision reached in the Mulheen proceeding.
The Agosta petitioners alternatively urge that the court amend the April 26 order to further reduce the passing grade. The basis for this request is petitioners’ claim that all the candidates who were certified as passed before the creation of the test validation board should be included in the expanded eligible list. In effect, then, these petitioners want to reopen the Gil-martin case, and to revive one of the claims originally made by the Gilmartin petitioners — that the changes in the final ratings made by the test validation board were invalid.
The time for a new group of petitioners to challenge the grading of the examination has long since passed. It is barred by the Statute of Limitations (CPLB 217).
The Agosta application is denied, and their petition dismissed.
This has been a difficult and complex case. The court extends its thanks to counsel for all the parties for their excellent analysis of the issues, and their zealous and helpful advocacy.